Eastern District of Kentucky
F I L E D
JUL 2 0 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION
CRIMINAL CASE NO. 05-30-DCR

| | |
|---|---|
| UNITED STATES OF AMERICA, | PLAINTIFF |
| VS. | **REPORT AND RECOMMENDATION** |
| RANDY SALYERS, et al | DEFENDANTS |

\*\*\*\*\*\*\*

This matter is before the Court upon the "Motion to Suppress" (DE#185) filed by the co-defendant Randy Salyers. Having carefully considered the record, including the Motion (DE#185) and Response (DE#199), the Magistrate Judge makes the following proposed findings of fact and conclusions of law:

## I. Findings of Fact

On April 27, 2005, FBI Special Agent Tim Briggs presented an application for a federal search warrant to United States District Judge Danny C. Reeves of the Eastern District of Kentucky. The application was for the residence of Randy Salyers located at 7101 North Highway 421 in Manchester, Kentucky. The application was supported by the 56-page affidavit of FBI Special Agent Tim Briggs. The affidavit set forth detailed facts about the ongoing investigation of a major drug-trafficking organization in Clay County, Kentucky, referred to as the "Kenny Day illegal drug distribution business". The affidavit included information about Agent Briggs' extensive experience in investigating drug crimes and his knowledge of patterns of activity in illegal drug trafficking, including the fact that drug dealers often keep drugs and related records at their residences. The affidavit described numerous specific controlled buys of illegal drugs, ground surveillance of various co-conspirators in the present case (including their efforts at counter-surveillance), and recorded wiretap evidence from over 3000 telephone conversations from March 11, 2005 to April 27, 2005.

The affidavit also provided information about the criminal histories of various alleged members of the drug-trafficking organization, including Randy

Salyers. The affidavit indicated that Randy Salyers had prior felonies, including a federal 1998 conviction for possession with intent to distribute methamphetamine. The affidavit also indicated that Salyers had recently been indicted in federal court on April 27, 2005 for conspiracy to possess with intent to distribute over five kilograms of cocaine and over 100 kilograms of marijuana. See Affidavit, ¶7 (E). Finally, the affidavit set forth separate sections with facts specifically pertaining to the ground surveillance and/or phone monitoring of each member of the organization. See Affidavit, ¶42, 60-66, for specific telephone calls pertaining to Randy Salyers.

Judge Reeves issued the search warrant. Law enforcement officers executed the warrant the next day on April 28, 2005. During the search of Randy Salyers' residence, law enforcement officers seized a quantity of suspected cocaine.

## II. Issues Presented

Defendant Randy Salyers moves for suppression of the evidence obtained during the April 28, 2005 search of his residence. Salyers argues that the supporting affidavit for the search warrant contains only a few references to him and fails to set forth any reasonable basis to believe that evidence of illegal activity would be found at his residence. Specifically, he argues that allegations in the affidavit do not "implicate the defendant in any criminal activity" and that "there is no reference in the affidavit that any evidence of criminal activity would be found at the defendant's residence at 7101 North U.S. 421, Manchester, Kentucky". DE#185, p. 4.

The United States asserts that the affidavit provided adequate probable cause to believe that evidence of a crime would be found at Salyers' residence, and that even if the affidavit were founding lacking, the *Leon* good faith exception would apply.

## III. Conclusions of Law

### Fourth Amendment

A person's right to be free from unreasonable searches and seizures arises from the Fourth Amendment to the United States Constitution, which specifically provides:

> "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

To satisfy the "reasonableness" requirement, law enforcement officers must obtain a warrant based upon probable cause prior to entering a residence. Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." United States v. Graham, 275 F.3d 490, 509 (6th Cir. 2001); United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). The existence of "probable cause" is determined by the totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 230-31, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). An issuing judge's determinations of probable cause is entitled to great deference and "should not be set aside unless arbitrarily exercised." United States v. Pelham, 801 F.2d 875, 877 (6th Cir. 1986), *cert. denied*, 479 U.S. 1092 (1987); United States v. Hopper, 58 Fed. Appx. 619, 625 (6th Cir. 2003)(same).

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place." United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004); United States v. Haynes 301 F.3d 669, 678 (6th Cir. 2002). In other words, there must be "nexus" with the place to be searched. Carpenter, 360 F.3d at 594; United States v. Van Shutters, 163 F.3d 331, 336-37 (6th Cir. 1998), *cert. denied*, 526 U.S. 1077 (1999); United States v. Couch, 367 F.3d 557, 560 (6th Cir. 2004).

**Whether the Affidavit Provided Probable Cause to Issue the Search Warrant**

Defendant Salyers challenges the sufficiency of the supporting affidavit for the search warrant that authorized the April 28, 2005 search of his residence. He alleges that the affidavit did not provide probable cause to search his residence. Counsel for Randy Salyers argues that, although the supporting affidavit is quite lengthy, there is little information specifically linking any of the alleged criminal activity to the residence of Randy Salyers. He argues that the affidavit provides an inadequate "nexus" with his residence, i.e. no reason to believe evidence of a crime would be found in that particular place. Defendant argues that the affidavit

is "largely a summary of certain phone conversations obtained from the interceptions of approximately three thousand (3000) phone conversations from March 11, 2005 to April 27, 2005." DE#185, p. 2. Salyers argues that only six of those wiretapped conversations pertain to him, and that the affidavit is based on "misstatements and pure speculation as it pertains to defendant Randy Salyers". DE#185, p. 2.

Randy Salyers alleges that Agent Briggs did not identify Salyers' voice on those six calls. However, the pertinent telephone calls came to or from Salyers' home telephone number and/or one of his eight personal cell phones registered to Salyers at his home address at 7101 North Highway 421, in Manchester, Kentucky. See DE#185, attached Affidavit, ¶60-63, 66. Moreover, Agent Briggs in his affidavit *did* identify Randy Salyer as a participant in those taped conversations. For example, in ¶66, the affiant sets forth a conversation on April 17, 2005 where Kenneth Day had called Randy Salyers on his cell phone and spoken with Salyers. Randy Salyers tells Kenneth Day that he just "got rid of four of them old tires and stuff there...I was going to come down there in a little bit and check you out or something on them." Special Agent Briggs explains in the affidavit that, in his experience, this was a code conversation for a drug transaction involving four ounces of cocaine, specifically that Salyers had just sold or delivered four ounces of cocaine and would be bringing payment to Day. Although Salyers alleges that this interpretation is speculative, the affiant has extensive experience in investigating drug trafficking, and his interpretation may properly be considered in the determination of probable cause under the totality of the circumstances.

In ¶63, the affiant sets forth a previous conversation on March 18, 2005 between Randy Salyers and Kenneth Day, and indicates that they discussed "oxycontin". Specifically, Day asks Salyers "oh, them oxy, they might show up you think?" This conversation occurred over the telephone line for Salyers' residence. Salyers disputes Agent Briggs' interpretation of the conversation and claims that Day's ungrammatical reference to "them oxy" is actually a reference to "amoxis", allegedly a shortened reference to amoxicillan, a common antibiotic, rather than oxycontin. Without discussing the plausibility of such allegation, it is noted that Salyers' post-search allegation of inaccuracy in the transcription of a particular conversation in the lengthy affidavit does not invalidate the entire warrant or require suppression.

Although the defendant claims that the affidavit is based on "misstatements and pure speculation as it pertains to defendant Randy Salyers", see DE#185, p. 2,

Page 4 of 9

defendant has made no preliminary showing of any deliberate falsity or reckless disregard for the truth that would implicate analysis under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Although an affiant must believe the factual allegations in the affidavit to be true, the Supreme Court observed in *Franks*:

> "This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true." Id. at 2681.

If some information, such as the transcription of a word in a wiretap conversation, is allegedly inaccurate in some respect, this allegation by itself does not provide a basis for suppression. The call fairly indicated that Day was asking Salyers whether "oxycontin" might "show up".

Although Randy Salyers did not participate in many of the recorded telephone conversations set forth in the affidavit, Salyers *was* specifically named in several. See Affidavit ¶42, 64, 65. For example, in ¶65, the affidavit indicates that on April 16, 2005, Kenneth Salyers (while asking about various members of the organization) says "I guess I can call Randy...", to which Terry Holland responds "he might have something". Kenneth Salyers replies "yeah, I know he's got one or two, anyway." The obvious implication here is that they are discussing who in the group might have a quantity of illegal drugs immediately available, and that Randy Salyers had "one or two".

The Affidavit, at ¶42, further indicates that on April 10, 2005, Kenneth Day called Terry Holland, and that during the conversation Holland stated:

> "Randy (believed to be Randy Salyers) said Jennings (believed to be Jennings White) said, the jailer is back in town. Met him at the red light....When he gets here and loads her up I'll be back. We got to take care of that one trick (believed to be reference to drugs)."

In context, this call occurred after co-defendant Thomas Effler had been arrested for transporting 30 pounds of marijuana, and the affiant special agent indicated he

believed that "they are moving drugs and assets for fear of law enforcement". See Affidavit ¶42. Given the whole situation described in the affidavit, it was reasonable to believe that Salyers may have been involved in the loading of drugs for the organization. The affidavit further indicates that, while Salyers' residence was under police surveillance, Salyers had been observed "moving furniture" into his residence. The moving of furniture by itself may appear "innocent", however, when considered in conjunction with the content of the wiretapped conversations, including the one set forth in ¶42, and the wealth of other information set forth in the affidavit regarding suspected drug trafficking, there is a permissible inference that the moving of the furniture into Salyers' residence may actually have been the "moving of drugs" into his residence to avoid law enforcement against other members of the organization. Such observation may properly contribute to the overall finding of probable cause to believe that evidence of crime could be found at Salyers' residence. See, e.g., United States v. Sokolow, 490 U.S. 1, 9, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1 (1989)(observing that a "series of acts, each of them perhaps innocent if viewed separately, but which when taken together" could warrant further investigation).

The affiant agent further explained in substantial detail that in his considerable experience, drug dealers frequently keep illegal drugs and records at their residence. When reviewing an affidavit, an officer's training and experience may be considered in determining probable cause. United States v. Martin, 920 F.2d 393, 399 (6th Cir. 1990). "[I]n the case of drug dealers, evidence is likely to be found where the dealers live." United States v. Jones, 159 F.3d 969, 975 (6th Cir. 1998). In United States v. Newton, 389 F.3d 631, 641 (6th Cir. 2004), the Sixth Circuit Court of Appeals observed that "with continuing criminal operations,...the lack of a direct known link between the criminal activity and residence, becomes minimal". See also, Greene, 250 F.3d at 481. With respect to the likelihood of finding evidence of crime at a particular place, certainty is not required, just a "fair probability". Gates, 462 U.S. at 238-239; Hale v. Kart, 396 F.3d 721, 725 (6th Cir. 2005).

In *Newton*, the dissenting opinion cautioned that:

"....the district court below and the majority opinion today both find probable cause to search properties associated with Newton on the strength of his involvement with the marijuana conspiracy and the blanket statement that evidence is likely to be found where drug dealers live. I believe this comes dangerously close to creating a special rule for drug-related search warrants, inappropriate under *Richards v. Wisconsin,* 520 U.S. 385, 392-95,

117 S.Ct. 1416, 137 L.Ed.2d 615 (1997)(invalidating Wisconsin state court's per se rule allowing no-knock search warrants in every case of suspected drug trafficking), and to eliding the distinction between probable cause to believe an individual guilty of a crime and probable cause to search property owned by that individual, in contravention of *Zurcher v. Stanford Daily,* 436 U.S. 547, 556-559 & n. 6, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)(emphasizing that the determinant of a proper search warrant is not that the owner of the property is suspected of a crime but that evidence is likely to be found on the premises)..."

In Zurcher v. Stanford Daily 436 U.S. 547, 558, 98 S.Ct. 1970 (1978), the Supreme Court observed that the Sixth Circuit had "expressed the correct view .... of the Fourth Amendment when... it ruled that "[o]nce it is established that probable cause exists to believe a federal crime has been committed a warrant may issue for the search of any property which the magistrate has probable cause to believe may be the place of concealment of evidence of the crime." Zurcher, 436 U.S. at 558, quoting United States v. Manufacturers Nat. Bank of Detroit, 536 F.2d 699, 703 (1976), *cert. denied,* 429 U.S. 1039 (1977).

"The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Zurcher, 436 U.S. at 556, 98 S.Ct. 1970; see also, Newton, 389 F.3d at 642; United States v. Schultz, 14 F.3d 1093, 1097-98 (6th Cir. 1994) (finding that search warrant for defendant's safe deposit box was not supported by probable cause because affidavit merely asserted that, based on the training and experience of the affiant-officer, it was not uncommon for the records of drug distribution to be maintained in bank safe deposit boxes).

In the present case, the affidavit set forth substantial evidence of an overall pattern of activity consistent with drug trafficking by the defendants, including Salyers. It provided information about Salyers' past conviction and pending indictment for drug trafficking. It described the contents of various recent and incriminating phone calls to and/or from Salyers' home phone and his cell phones, as well as the possibly suspicious movement of furniture into Salyers' residence at a time when the members of the organization feared law enforcement and were believed to be moving drugs around. It also included an extensive description (based on the affiant's considerable experience) that drug traffickers frequently keep drugs at the their residences. The existence of probable cause to support the search warrant for Salyers' residence is stronger than the basis for probable cause

upheld by the Sixth Circuit Court of Appeals in Newton. The affidavit in the present case certainly contains far more than the bare generalized allegation that was rejected by the Sixth Circuit Court of Appeals in *Schultz*.

In the present case, the affidavit shows drug-related conversations among the member of a large network of drug traffickers, including Salyers, as well as references by other members to Salyers with respect to drug availability or "loading". "Affidavits do not have to be perfect, nor do they have to provide every specific piece of information to be upheld." Hale v. Kart, 396 F.3d 721, 725 (6th Cir. 2005). "Affidavits are not required to use magic words, nor does what is obvious in context need to be spelled out... Nor is an affidavit required to present proof that would without question withstand rigorous cross-examination." Id., quoting United States v. Allen, 211 F.3d 970, 976 (6th Cir. 2000)(en banc).

The United States Supreme Court has cautioned that overly technical critiques of affidavits should be avoided. Gates, 462 U.S. at 236 (it is the "totality of the circumstances" that must be considered). The Supreme Court has explained that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him....there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 230-31, 238-239. Under the totality of the circumstances presented in the affidavit in the present case, the issuing judge had sufficient information to draw the independent conclusion that there was at least a 'fair probability' that evidence of drug trafficking would be found at Salyers' residence. See, e.g., Hale, 396 F.3d at 725. Certainty is not required. Id.

**Leon "Good Faith" Exception**

Even supposing that the detailed and lengthy affidavit were held insufficient to give probable cause to search Salyers' residence, the United States correctly asserts that the search would pass constitutional muster under the well-known "good faith" exception to the exclusionary rule set forth in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed2d 677 (1984). *Leon* does not bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective. The reliance on the judge's determination of probable cause by the officers executing the warrant must be objectively reasonable. United States v. Chaar, 137 F.3d 359, 364 (6th Cir. 1998).

The affidavit in the present case was detailed, lengthy, and far from "barebones". *Cf.* United States v. Laughton, 409 F.3d 744, 748 (6th Cir.

2005)(finding that *Leon* did not apply because affidavit was so lacking that no reasonable officer could have believed it had indicia of probable cause). In the present case, the supporting affidavit contained detailed facts about the drug-trafficking activities of the Day organization of which Salyers was allegedly a member, and the officers executing the search warrant in the present case could objectively have reasonably relied upon such warrant in conducting the search of Salyers' residence. The warrant is not facially deficient. The affidavit supporting the warrant was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." United States v. Carpenter, 360 F.3d 591, 595 (6th Cir. 2004).

## **RECOMMENDATION**

It is **RECOMMENDED** that "Motions to Suppress" (DE#185) by the co-defendant Randy Salyers should be **DENIED**.

Particularized objections to this Report and Recommendation must be filed within ten (10) days of the date of service of the same or further appeal is waived. United States v. Walters, 638 F.2d 947 (6th Cir. 1981); Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), *affirmed*, 474 U.S. 140 (1985). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. See Howard v. Secretary of Health and Human Services, 932 F.2d 505 (6th Cir. 1991). A party may file a response to another party's objection within ten (10) days after being served with a copy thereof. Rule 72(b), Fed. R.Civ.P.

This the 20th day of July, 2005.



Signed By:
J. B. Johnson, Jr.
United States Magistrate Judge